IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
ELECTRONIC PRIVACY                  )
INFORMATION CENTER                  )
1519 New Hampshire Avenue, N.W.     )
Washington, D.C. 20036,             )
                                    )
        Plaintiff,                  )
                                    )
        v.                          )        Civil Action No. 25-597
                                    )
UNITED STATES                       )
OFFICE OF PERSONNEL                 )
MANAGEMENT                          )
1900 E Street, N.W.                 )
Washington, D.C. 20415              )
                                    )
        Defendant.                  )
_____)

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

1.      This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a), for

injunctive and other appropriate relief, seeking the release of agency records requested by

Plaintiff Electronic Privacy Information Center ("EPIC") from Defendant United States Office of

Personnel Management ("OPM").

2.      EPIC seeks the release of email records sent to or received by OPM officials Charles

Ezell & Marvin Brown II within a two-week period of January, 2025; requests for access

privileges to OPM databases and IT systems made or received by OPM's Office of the Chief

Information Officer between January 20, 2025, and the date EPIC's FOIA Request was

processed; the Security Assessment Report created to assess the risks of establishing the

Government-Wide Email System at OPM; and the Authorization to Operate granted to establish

the Government-Wide Email System at OPM.

3.     EPIC challenges OPM's failure to make timely decisions about EPIC's FOIA Requests and to disclose non-exempt records responsive to EPIC's FOIA Requests.

4.     EPIC now seeks an injunctive order requiring disclosure, as soon as practicable, of all responsive, non-exempt records.

### Jurisdiction and Venue

5.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 5 U.S.C. §§ 552(a)(4)(A)(vii), (a)(4)(B), and (a)(6)(c)(i). This Court has personal jurisdiction over Defendant OPM.

6.     Venue is proper in this district under 5 U.S.C. § 552(A)(4)(B).

### Parties

7.     Plaintiff EPIC is a public-interest research organization incorporated as a 501(c)(3) non-profit corporation in Washington, D.C.  EPIC conducts government oversight and analyzes the impact of government programs on civil liberties and privacy interests. EPIC publishes whitepapers, reports, blog posts, and a monthly newsletter ("the EPIC Alert"). EPIC also maintains a popular website, epic.org, where EPIC publishes educational resources about emerging privacy and civil liberties issues, including documents obtained from federal agencies under the FOIA. EPIC routinely disseminates information to the public through the EPIC website, the EPIC Alert, and various other news organizations. EPIC is a representative of the news media. *EPIC v. DOD*, 241 F. Supp. 2d 5 (D.D.C. 2003).

8.     Defendant OPM is a federal agency within the meaning of the FOIA, 5 U.S.C. § 552(f)(1). Defendant OPM is headquartered in Washington, D.C.

## Facts

9.      OPM is the federal government's human resources agency and personnel policy manager

responsible for evaluating, adopting, and administering workforce policies, programs, and

benefits, including the federal retiree pension program.[1]

10.     Because of its position overseeing the federal workforce, OPM maintains the personal

information of millions of Americans, including potential, current, and retired employees. As of

November 2024, the federal government employed just over 3 million people, or 1.87% of the

entire civilian workforce.[2] An additional estimated 2.5 million Americans are annuitants

managed by OPM, either retired federal workers or their surviving spouses.[3]

### EPIC's First FOIA Request

11.     On January 27, 2025, an anonymous OPM employee alleged that OPM leadership,

through Charles Ezell, was sending broad requests to federal agencies seeking information on

federal government employees.[4]

12.     According to these allegations, agencies were directed to send employee information to

an individual who did not have the proper security clearance.[5]

---

[1] *Our Work*, OPM.gov, https://www.opm.gov/about-us/our-work/ (last accessed Feb. 25, 2025).
[2] Drew Desilver, *What the Data Says About Federal Workers*, Pew Research Center (Jan. 7, 2025), https://www.pewresearch.org/short-reads/2025/01/07/what-the-data-says-about-federal-workers/.
[3] Federal Civilian Employment, OPM.gov (Sept. 2017), https://www.opm.gov/policy-data-oversight/data-analysis-documentation/federal-employment-reports/reports-publications/federal-civilian-employment/.
[4] u/alexismya2025, *This was posted about OPM in our Union chat*, REDDIT (Jan. 27, 2025), https://www.reddit.com/r/fednews/comments/1ibbbh7/this_was_posted_about_opm_in_our_union_chat/#lightbox.
[5] *Id.*

13.    The anonymous employee also alleged that Melvin Brown, who stepped down from his role as OPM's Chief Information Officer after only one week, was replaced because he declined to set up email lists to contact career civil servants directly.

14.    On January 28, 2025, EPIC submitted its first FOIA Request to Camille Aponte-Rossini, OPM's FOIA Public Liaison, via email at FOIA@opm.gov ("EPIC's First FOIA Request"). EPIC requested expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E).

15.    EPIC's First FOIA Request sought all emails and memoranda sent to or from two OPM officials. Specifically, EPIC sought all emails and memoranda sent by OPM's Acting Director, Charles Ezell, or employees acting on behalf of Charles Ezell, between January 20, 2025, and January 27, 2025. EPIC also sought all emails sent to OPM's former Chief Information Officer Melvin Brown between January 14, 2022, and January 21, 2022.

16.    EPIC sought "news media" fee status under 5 U.S.C. § 552(4)(A)(ii).

17.    EPIC also sought a waiver of all additional fees under 5 U.S.C. § 552(a)(4)(A)(iii) because disclosure of the documents requested was in the public interest and would "contribute significantly to public understanding of the operations or activities of the government."

18.    OPM did not respond to EPIC's email nor confirm its receipt of EPIC's First FOIA Request.

19.    On February 3, 2025, Abigail Kunkler, EPIC Law Fellow, emailed OPM's FOIA Requester Service Center requesting acknowledgment of EPIC's FOIA Request.

20.    Following Ms. Kunkler's email requesting acknowledgment, OPM sent an Acknowledgement of EPIC's FOIA Request via email on February 3, 2025, and assigned it FOIA Request Number 25-OPM-0776-F.

21.     In its February 3, 2025, acknowledgement email, OPM granted EPIC's fee waiver request and stated that it would review EPIC's request for expedited processing. OPM also directed EPIC to email Tiffany Ford for further inquiries regarding EPIC's FOIA Request.

22.     FOIA requires agencies to determine whether to provide expedited processing within 10 days of the request. 5 U.S.C. § 552(a)(6)(E)(ii)(I). Despite this mandate, OPM has not delivered notice of its expedition determination nor responded to EPIC's numerous attempts to request an update on OPM's processing of EPIC's First FOIA Request.

23.     Per OPM's instructions, Ms. Kunkler emailed Tiffany Ford requesting updates on EPIC's FOIA Request on February 7, 2025, and February 11, 2025. Neither Tiffany Ford, nor another OPM employee, has responded to these requests.

24.     On the morning of February 13, 2025, Ms. Kunkler placed three phone calls to OPM. Two calls, placed to OPM's FOIA Public Liaison Camille Aponte-Rossini, were answered and disconnected by OPM. The third call, placed to OPM's FOIA Requester Service Center, was unanswered. EPIC left a voicemail with the Service Center requesting an update on EPIC's First FOIA Request.

25.     As of this complaint, OPM has not made any determination regarding EPIC's First FOIA Request.

**EPIC's Second FOIA Request**

26.     OPM, like all federal agencies, is required to staff a Chief Information Officer ("CIO") to create, administer, and monitor a secure and effective information technology architecture. 40 U.S.C. § 11315(b), (c).

27.     OPM's current CIO, Greg Hogan, is the head of OPM's Office of the Chief Information

Officer ("OCIO"). The OCIO receives and processes requests for access to databases maintained

by the OCIO.

28.     All federal information systems, including databases maintained by the OCIO, must

follow the Risk Management Framework developed by the National Institute of Standards &

Technology ("NIST"). Federal Information Security Management Act ("FISMA"), 44 U.S.C. §

3554(a)(1)(B)(i).

29.     The Risk Management Framework requires agencies to conduct Security Control

Assessments that implement organization-approved Security Assessment Plans.[6] The results of

the assessment plans must be produced in a Security Assessment Report.[7]

30.     Following the completion of a Security Assessment Report, a senior official decides

whether to authorize the information system to operate and may issue an authorization to

operate.[8]

---

[6] U.S. Department of Commerce & NIST, NIST SP 800-53A, *Assessing Security and Privacy Controls in Information Systems and Organizations* (Jan. 2022), https://doi.org/10.6028/NIST.SP.800-53Ar5.
[7] *Id.*
[8] NIST, Risk Management Framework (RMF) – Authorize Step, csrc.nist.gov, https://csrc.nist.gov/Projects/risk-management/about-rmf/authorize-step (last accessed Feb. 28, 2025).

31.    Beginning on January 23, 2025, OPM began operating a government-wide email server, later dubbed the Government-Wide Email System.[9] This server has been used by the associates of Elon Musk and the DOGE/USDS to simultaneously contact all federal employees.[10]

32.    A government agency's email server is an information system within the meaning of FISMA. *See* 44 U.S.C. § 3502(6), (8). Before installing and using this email server, OPM was required by FISMA to follow the Risk Management Framework, including developing a Security Assessment Report and issuing an Authorization to Operate. 44 U.S.C. § 3554(a)(1)(B)(i).

33.    On information and belief, OPM has failed to follow the Risk Management Framework with respect to the Government-Wide Email System.

34.    On February 14, 2025, EPIC submitted a second FOIA Request to OPM via email at FOIA@opm.gov ("EPIC's Second FOIA Request"). EPIC requested expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E).

35.    EPIC's Second FOIA Request sought disclosure of the following documents:

    a.    Requests for access privileges to OPM databases and IT systems made or received by OPM's Office of the Chief Information Officer between January 20, 2025, and the date on which EPIC's Second FOIA Request is processed, including but not limited to requests made via email and Microsoft Teams.

    b.    The Security Assessment Report ("SAR") created to assess the security risks of establishing the Government-Wide Email System at OPM.

---

[9] *See* Federal Government-Wide Email Communication Test, OPM.gov (Jan. 23, 2025), https://www.opm.gov/statements/federal-government-wide-email-communication-test-coming/; Riccardo Biasini, *Privacy Impact Assessment for Government-Wide Email System (GWES)*, OPM (Feb. 5, 2025), https://www.opm.gov/media/kfpozkad/gwes-pia.pdf.
[10] A.J. Vicens, *Email Server Used by Elon Musk's Team Does Not Pose Privacy Risk, Agency Says*, Reuters (Feb. 5, 2025), https://www.reuters.com/world/us/controversial-opm-email-server-operates-entirely-government-computers-agency-2025-02-05/.

      c.     The authorization to operate ("ATO"), also known as authority to operate, granted to operate the Government-Wide Email System at OPM.

36.    EPIC sought "news media" fee status under 5 U.S.C. § 552(4)(A)(ii).

37.    EPIC also sought a waiver of all additional fees under 5 U.S.C. § 552(a)(4)(A)(iii) because disclosure of the documents requested was in the public interest and would "contribute significantly to public understanding of the operations or activities of the government."

38.    On February 19, 2025, Ms. Kunkler emailed OPM's FOIA Requester Service Center asking it to confirm that it received and is processing EPIC's Second FOIA Request. OPM did not respond to this email.

39.    Ms. Kunkler emailed OPM's FOIA Requester Service Center again on February 25, 2025, seeking an acknowledgement of EPIC's Second FOIA Request, a determination on EPIC's request for expedition, and OPM's timeline for responding to EPIC's Second FOIA Request. OPM did not respond to this email.

40.    As of this complaint, OPM has not acknowledged nor made any determination regarding EPIC's Second FOIA Request.

**OPM's Dismissal of FOIA Staff**

41.    FOIA requires each agency to designate a Chief FOIA officer and at least one FOIA Public Liaison to supervise FOIA Requester Center Staff. 5 U.S.C. §§ 552(j)(1), (j)(2)(H), (l). Agencies also must inform the public on how and from which employees the public may obtain information, make requests, or obtain decisions. 5 U.S.C. § 552(a)(1)(A).

42.    At the time of this complaint, OPM's website directs individuals to send FOIA requests via email to OPM's FOIA Requester Service Center at FOIA@opm.gov. Alternatively, a requester

may send a physical request to the U.S. Office of Personnel Management, 1900 E Street, N.W.,

OPIM/FOIA Room 5H35, Washington, D.C. 20415-7900.[11]

43.    On information and belief, OPM dismissed the staff in its FOIA Requester Service Center

on or about February 14, 2025.

44.    On February 18, 2025, CNN published a story confirming that OPM staff handling FOIA

requests had been fired.[12]

## Count I

### Violation of FOIA: Failure to Comply with Statutory Deadlines

45.    Plaintiff asserts and incorporates by reference paragraphs 1–44.

46.    Defendant OPM has failed to make a determination regarding EPIC's request for

expedited processing of EPIC's First FOIA Request within ten calendar days and has thus

violated the deadline under 5 U.S.C. § 552(a)(6)(E)(ii)(I).

47.    Defendant OPM has failed to make a determination regarding EPIC's request for

expedited processing of EPIC's Second FOIA Request within ten calendar days and has thus

violated the deadline under 5 U.S.C. § 552(a)(6)(E)(ii)(I).

48.    Defendant OPM has failed to make a determination regarding EPIC's First FOIA Request

within twenty business days and has thus violated the deadline under 5 U.S.C. § 552(a)(6)(A)(i)

and 28 C.F.R. § 16.5.

49.    Plaintiff has constructively exhausted all applicable administrative remedies with respect

to EPIC's First and Second FOIA Requests. 5 U.S.C. § 552(a)(6)(C)(i).

---

[11] Freedom of Information Act, OPM.gov, https://www.opm.gov/information-management/freedom-of-information-act/ (last accessed Feb. 25, 2025).
[12] Zachary Cohen, Alayna Treene, & Hadas Gold, *'Good Luck With That.' Trump Administration Terminates Privacy Officials at Agency Overseeing Government Hiring and Firing*, CNN (Feb. 18, 2025), https://www.cnn.com/2025/02/18/politics/opm-privacy-team-fired/index.html.

## Count II

### Violation of FOIA: Unlawful Withholding of Agency Records

50.     Plaintiff asserts and incorporates by reference paragraphs 1–44.

51.     Defendant has wrongfully withheld agency records requested by Plaintiff in EPIC's First and Second FOIA Requests.

52.     Plaintiff has constructively exhausted applicable administrative remedies with respect to Defendant's withholding of the requested records. 5 U.S.C. § 552(a)(6)(C)(i).

53.     Plaintiff is entitled to injunctive relief with respect to the release and disclosure of the requested records.

## Count III

### Violation of FOIA: Impermissible Policy, Pattern, and Practice of Failing to Comply with Statutory Deadlines

54.     Plaintiff asserts and incorporates by reference paragraphs 1–44.

55.     Defendant OPM has failed to make a determination regarding EPIC's First FOIA Request and request for expedited processing. It has been 32 days since EPIC submitted its First FOIA Request and requested expedited processing. Thus, the Defendant has violated statutory deadlines under 5 U.S.C. §§ 552(a)(6)(E)(ii)(I), 552(a)(6)(A)(i).

56.     Defendant OPM has failed to make a determination, or even acknowledge, EPIC's Second FOIA Request and request for expedited processing. It has been 15 days since EPIC submitted its Second FOIA Request and requested expedited processing.

57.     It has been reported that Defendant OPM has removed staff from its FOIA Requester Service Center, and EPIC's attempts to communicate with the Service Center are unanswered.

58.    On information and belief, Defendant OPM has a policy and practice of failing to comply with the FOIA's statutory guidelines in connection with processing EPIC's First and Second FOIA Requests.

59.    Defendant OPM's repeated, unlawful, and intentional actions have harmed, and will continue to harm, EPIC and other requesters by requiring them to file suit against the agency in order to get the agency to process reasonably described FOIA requests.

60.    EPIC is being irreparably harmed by Defendant OPM's unlawful policy and practice and will continue to be irreparably harmed unless OPM is compelled to comply fully with the FOIA's procedural requirements.

## Count IV

### Violation of FOIA: Impermissible Policy, Pattern, and Practice of Failing to Conduct a Search in Response to Reasonably Described FOIA Requests

61.    Plaintiff asserts and incorporates by reference paragraph 1–44.

62.    Defendant OPM has adopted and is engaged in a policy, pattern, and practice of violating the FOIA's requirement that agencies search for records in response to a reasonably described request.

63.    Under Defendant OPM's unlawful policy, pattern, and practice, the agency refuses to conduct a search responsive to EPIC's First and Second FOIA Requests that clearly identified a specific type of record in the agency's possession and limited the request to specific date ranges.

64.    Under Defendant OPM's unlawful policy, pattern, and practice, the agency has never claimed that the requested records do not exist, that the requested records are exempt from production, or that the agency does not have control, custody, or possession of these types of records.

65.    Under Defendant OPM's unlawful policy, pattern, and practice, the agency has removed employees responsible for responding to EPIC's FOIA Requests and have not redirected EPIC or the public to the appropriate employees responsible for EPIC's FOIA Requests.

66.    Defendant OPM is violating the FOIA by maintaining a policy, pattern, and practice of refusing to conduct searches reasonably calculated to uncover any records responsive to FOIA requests directed to OPM.

67.    The agency's repeated, unlawful, and intentional actions have harmed, and will continue to harm, EPIC and other similar requesters by indefinitely delaying the processing of their FOIA requests and withholding agency records.

68.    The agency's unlawful policy, pattern, and practice of refusing to conduct a search in response to reasonably described FOIA requests like EPIC's FOIA Requests will continue absent intervention by this Court.

69.    EPIC therefore is entitled to declaratory and injunctive relief to compel the agency to comply with the requirements of the FOIA and to prevent the agency from continuing to apply its unlawful policy, pattern, or practice of refusing to search for responsive records.

### Count V

**Claim for Declaratory Relief**

70.    EPIC asserts and incorporates by reference paragraphs 1–44.

71.    EPIC is entitled under 28 U.S.C. § 2201(a) to a declaration of the rights and other legal relations of the parties with respect to the claims set forth in Counts I–IV.

### Requested Relief

WHEREFORE, Plaintiff requests that this Court:

   A.  Order Defendant to conduct a reasonable search for all responsive records;

B.  Order Defendant to disclose to Plaintiff, as soon as practicable, all responsive, non-exempt records;

C.  Order Defendant to produce a *Vaughn* Index identifying any records or portions of records withheld, if such records exist, stating the statutory exemption claimed and explaining how disclosure would damage the interests protected by the claimed exemption;

D.  Order Defendant to produce the records sought without the assessment of search fees;

E.  Order Defendant to grand Plaintiff's request for a fee waiver;

F.  Award Plaintiff costs and reasonable attorney's fees incurred in this action; and

G.  Grant such other relief as the Court may deem just and proper.

Respectfully Submitted,

Alan Butler, D.C. Bar # 1012128
EPIC Executive Director and President

Abigail Kunkler, D.C. Bar # 90030868
EPIC Law Fellow

By: */s/ Jeramie D. Scott*

Jeramie D. Scott, D.C. Bar # 1025909
ELECTRONIC PRIVACY
INFORMATION CENTER
1519 New Hampshire Ave., N.W.
Washington, D.C. 20036
(202) 483-1140 (telephone)
(202) 483-1248 (facsimile)

Dated: February 28, 2025